Good morning. May it please the court. I'm Denise Benson and I represent the appellate in this case, Mr. Sean Page. Your Honor, there were three issues in the brief. I was going to address Issue 1, the legal sufficiency of Count 1 of the indictment, and also Issue 3, which would be the upward variance that was imposed by the sentencing court, unless the court wanted me to proceed differently. You may press ahead. Trust me on experience. You will get a question at some point. Okay. Well, as the court is aware, Mr. Page proceeded to trial on a three-count, actually it was a four-count indictment, but the fourth count was dismissed during the trial. Count 1 was theft of government property, and this involved the type of contract, what they called a procurement contract, in that these contracts were set aside for a certain group, and in this case it was a certain group. So is it your position that you can lie your way into a benefit you're not entitled to, and as long as you do the work, then there's no crime committed, even though you lied to the government to get that work? Your Honor, if this was a fraud case, a wire fraud case, I think I would look at it differently, but because the government charged theft of property, I do believe that the procurement cases are looked at differently than maybe what they call the government benefits case. This wasn't a loan from the government. This wasn't Medicare fraud. This was a contract that he had with the Veterans Administration Office and with other government entities to do landscaping work and to do, I believe, just— But is there a finite amount of funds available for veterans to be in this program? Yes, Your Honor, I believe there are funds that are set aside for that. So didn't your client steal that from the people for whom it was intended, from the government who intended it to go to veterans and instead it went to him? Well, Your Honor, I believe in the United States v. Harrison, which was decided around this time, the Fifth Circuit had ruled that in these government procurement cases, it's not the awardee who's the benefit. It is the United States government and for them to have their contracts done correctly, that they're procurement cases, and that's what the whole thing is. It's not the service-disabled people who are victims. It's the government. Right, but the government meant to benefit veterans and was unable to do so in this case because your client stole his father's identity and pretended to be a veteran. Well, Your Honor, I believe the contracts with them do state that a disabled veteran has to have at least 51% of the ownership of the business. And, yes, Mr. Page did use his father's Social Security. His father was a disabled veteran. And I believe the whole— And his father's the one who turned him in, right? Yes, Your Honor, and I believe that his very fractured relationship may have been good at one time, but definitely during the trial his father did testify against him, and he was the one who turned him in. But as far as the contracts go, as the Court is aware, there was no loss amount because the contracts were completed. And your argument seems to be no harm, no foul. The government got the benefit of the contract. But we said, this Court in Barnes, that proof of the government's property loss is unnecessary to prove a violation of 641. Yes, Your Honor, and I would like to distinguish this case from Barnes in that Barnes was a benefits-type case. In Barnes, the defendants had requested a loan and that they had falsified the loan documents, and then they received that benefit of the money. And then they didn't use that money like they were supposed to. I believe in Barnes they were supposed to buy 40 cows and a bull, and they did not use that money as it was supposed to. And I believe in Barnes, one of the statements that the Court said, that whoever utilizes the funds for purposes other than those for which they were intended. Now, yes, these were for service disabled, but what were the funds intended to do? But Barnes was Section 641, just like Count 1 is today. Yes, Your Honor, it was a 641. But I believe that the procurement cases are different, just like this Court ruled for sentencing purposes, than where you're requesting a loan or you are committing Medicaid fraud or even any type of benefit that you're getting from the government. You are arguing your insufficiency argument. You've got a four-day jury trial. You're not asserting any claims of an evidentiary error or an omission by the trial court or not letting something in or something got in that shouldn't. So in essence, the argument you're making to us about insufficiency, the jury heard all that. They heard your client, they heard his father. So beyond the legal argument you're making on the facts, I mean, what's your best case, if you will, for us not viewing the jury verdict as viewing all the same evidence? I mean, why does he get a do-over? Your Honor, I do understand that the burden of proof after a jury verdict is that the court will look at the relevant evidence, and it is viewed in light most favorable to the verdict. However, Your Honor, I believe that in Barnes and the instruction given to the jury that there does not have to be a loss or the government does not have to prove that there is a loss, then this type of case, they should have been able to show there was a loss for theft of government property. But, Your Honor, I can move on to Issue 3. Before you get to 3, I know you hadn't planned to argue 2, but I'm just confused about the argument you're making on 2 and the purpose of oral argument in part is to try to help us understand. And so you said the evidence did not show that Page stole his father's identification. Are you making some sort of argument that he didn't physically come in and take the Social Security card? I'm trying to understand how you can even with a straight face make that argument, so I feel like I'm missing what you're trying to say there. And I've read it and read it, and I'm not getting it. So can you rephrase it for me so I get it? Well, I think the testimony at trial was that Mr. Page was saying that his father knew he was using a Social Security number, that there was a falling out later on, and then the father then wrote the letter. And, of course, it would be who the jury gave the credibility to. Right, and so how would that even be an issue for us? Because the father testified completely to the contrary, never gave him any permission to use a Social Security number. He says he did. Jury gets to pick. So what is the legal issue there that I'm missing? Well, Your Honor, I believe in the aggravated identity theft, that it was just based on the fact that Mr. Page had testified that he had been given permission. I believe the court is correct in saying that once Mr. Dalton Page testified that he had not given him permission to use a Social Security. Okay, so you don't view that as a very strong issue, to be fair. No, we don't. Okay, fair enough. That may be why you didn't want to argue it. I just wanted to be sure I didn't misunderstand the argument, so that's fine. Thank you. Kind of tough when your own dad's sitting up there staring at you. Jury gets to pick between your client and his daddy. It's the art of advocacy. Press on. Fair enough. So, Your Honor, I do believe that the strongest argument is to the upward variance that the court had imposed on Mr. Page, and I believe the guideline range that the precedence report had found was six to 12 months. Count two, the aggravated identity thefts are statutorily 24 months, with the first one having to be consecutive, and the second count as to whether it's 24 months is concurrent or consecutive, and it is in the discretion of the court. And I do know that the guidelines are no longer binding on the court. However, I believe when sentencing, the Fifth Circuit has ruled that you look to the guidelines first, determine what the guideline range is, and we are not stating that the district court had any procedural error. We believe that the guidelines were correctly assessed. There were no objections done by the defense counsel or by the government as to what the guidelines are. However, we are saying that when the court was balancing the different 3553 factors, that the court should not have looked at the loss amount. United States v. Harris came out about three months before the sentencing. And the precedence report reflected that. They found a loss amount of zero. The government did not object to that finding of the loss amount. They also enhanced the sentence by two levels for abuse of trust, stating that by Mr. Page having a contract with the government, that trust that the government had that this paperwork was being filled out correctly was abused, and he also received a two-level enhancement for being a leader in this incident. And so the government filed a motion for an upper departure, and one of the things that the government had stated was that they felt this should be a government's benefit case and that the court should have been able to look at the $1.7 million, I believe was the amount that they're saying that Mr. Page had gotten. But they were aware the Fifth Circuit had ruled in procurement cases you do not look at it as a government benefit case. That is more for, as I stated, the loans for any type of government benefit, and these type of contracts are not a government benefit case. So you look at what was the contract amount and what was the fair market value, and then that gives you the loss amount. But one of the things that the sentencing guidelines tell a court to look at is the deterrent effect, and I see that as two things, deterring this person and deterring other people who might be inclined to do it. And it seems to me if people know, well, hey, as long as I do the work, I can go take these veterans' benefits and I'm good to go, they're not deterred by the low loss amount issue. And so they're not as deterred as they would be if they knew, well, a judge may take that into account in sentencing me to a higher number. I realize criminals don't necessarily study the sentencing guidelines before they do that, but this is the theory of the deterrent effect. What is your response to that? Well, Your Honor, the guidelines do take into account the base offense level, which was a base offense level of 6, and they do look at other enhancements. So this wasn't a case where Mr. Page wasn't going to do any jail time. And when you look at his background, he had never had any contact with the criminal justice system before this offense, not even a traffic ticket. So for a person who's first arrested into the federal system, the guideline range was 6 to 12 months. And compared to some other federal cases, that's not a huge amount of time. But for somebody who's never even been one day in jail, 12 months is a long time to be in jail. And also the aggravated identity thefts were going to run at least one, would be consecutive. So his sentence would have been 36 months. So I do believe that 6 to 12 months is a deterrent, which was the sentencing guideline range. But the question isn't really what you believe or what I believe. The question is whether it was improper for the sentencing court to believe that because the sentencing judge has a lot of discretion here. And so we have to defer to that, even if I might have given a different sentence or you would have given a different sentence. The question is, was it an improper sentence? And so that's why I asked about the deterrent effect. Is it improper for the judge to consider that maybe we need to throw the book at this person a little bit harder than the sentencing guidelines to make the point that we treat these veterans programs with some respect and we want to maintain their integrity? Yes, Your Honor. The district court is allowed definitely the abuse of discretion to look at the deterrent factor. However, I think that they have to look at what is so different about this case than any other procurement case. In Harris that was set aside for, I believe it was minorities and women. So that is correct, but I think the guidelines do take into account by the offense level six for this type of case. And so yes, the court may look at a deterrent factor, but I think in this case she gave the loss amount too much weight because the court had ruled it. I believe they had even mentioned that, you know, Mr. Page would have gotten these contracts and did no work and just said, I'm going to take this money and I'm going to go spend it on myself. But all the contracts were completed and the court had stated in Harris that they should be looked at differently than somebody who would just take a contract and not do any work. But yes, Your Honor, the court can look at the deterrent factor. And you don't point us to a case that makes it reversible error for the district court. Well, we get your argument as to why from your client's standpoint it would have been better if the district court did something else, but you don't give us a case that makes what the district court did reversible error. Right? I mean, you argue Harris, but there's nothing in the guidelines that prohibits expressly what the district court did. Correct? Your Honor, I believe in United States v. Smith, it talked about the balancing effect. If the court's looking at any factors that should not have been looked at based on the factors that they were. And so my argument is that the court shouldn't have looked at the loss amount since the Fifth Circuit had ruled that. Yeah, but it's a plain error case. It wasn't so poignant that there was an objection below, you know, on the point. So, you know, it gets its gravitas on appeal. So, you know, it's a plain error review. It's within this huge heartland that the district court has to sentence. I get it in terms of Mr. Page thinking otherwise, but my point being you don't identify a case where, you know, down the square district court could not do it, therefore we reverse. Short of that, it's discretionary. Do you agree? Yes, Your Honor. There's not a particular case that says you can't look at that. All right. Your Honor, the only other thing that I would say as far as whether the third or actually the second count of the aggravated identity theft that the guidelines had set out when it should be concurrent or consecutive and, again, it is discretionary on the court, but it says that if there's relevant conduct or if they can be grouped together, the court should have run those concurrently. All right. I'm going to stop you there with having made the point. You have a red light. Oh, I'm sorry, Your Honor. No, it's okay. You at least made the point. So you've got a red light and you've preserved your rebuttal time. So on rebuttal, if you want to further expound on that, you can. Thank you, Your Honor. Thank you. All right. Let's hear from the government, Mr. Jackson. May it please the court. Good morning. My name is Glenn Jackson. I represent the United States, the appellee in this case. Did you try the case? I was one of the two attorneys who tried the case, yes. Seated with me is Andrew Stover, who also tried the case. We always love to have the lawyers that are in the trenches when it happens. Thank you. We have a special set of questions for them. I'll say thank you anyway. I respectfully urge the court to affirm the sentence and conviction on all grounds. As the court noted, this was a multiple-day jury trial, and the jury convicted the defendant, Mr. Page, of one count of theft of government property and two counts of aggravated identity theft after hearing evidence over those days. The conviction should be affirmed because the evidence supports the jury's decision. Specifically, during this trial— Just a curiosity. Why does this case take four days to try? Your Honor, explaining the intricacies of the government— there were no stipulations— and explaining the intricacies of all the government contracts— You had a guy on trial whose daddy is your star witness, purloining veterans' funds. I'm sure you were hoping he didn't plead so you could get to try this thing. And then two lawyers on the government side, and it took four days to try this case? And about three of those days, Your Honor, were people from the Veterans Administration, the Department of the Army, Air Force, explaining how this contract system works. So there was a lot of boring testimony and a few hours to the meat of the matter. A lot of people on the clock. Yes, sir. I mean, I was just wondering. I mean, we see conspiracy trials. I mean, cases with umpteen thousand witnesses, and, you know, try them a couple of days. And I look at something like a four-day jury trial? Over this? I mean, you got the guy's daddy on the stand, and you're salivating to get to cross-examine this guy and so forth, and, you know, four days? Anyway, it was just a curiosity. I wrote a sticky note, asked the government why it took four days. But anyway, go ahead. And I can assure the Court, Mr. Stover and I were wondering that ourselves as we sat through the trial. But we had to authenticate every record that came in. I understand. You had a burden of proof, so you could have just said we had a burden of proof. Well, it is hard when people won't stipulate to obviously admissible exhibits, and you actually have to go through the business records exception or the government records exception or authenticity. Those rules that our friends in the audience are learning are actually fairly cumbersome if you have to do them on every exhibit. They are extremely cumbersome. And as the Court has pointed out, the defendant's own father was going to testify. It wasn't a close case, but he exercised his right to go to trial. Judge Haynes has ably rehabilitated you. You can go on to the argument you wanted to make. Okay. Thank you. During this trial, the jury heard that the defendant himself was not a veteran. They heard that he stole the identity of his own father, who was not only a veteran, but it was a combat veteran from the Vietnam era. The jury heard that the defendant misrepresented his father's ownership interest in the defendant's businesses, and as a result of that, the trial evidence showed that the defendant stole over $780,000 in government funds. Those funds were meant to go to disabled veterans in businesses they ran. That is why they had been set aside, and that was why we pursued this case. But how about the argument that this case wasn't properly charged, that you should have charged some version of fraud like wire fraud or mail fraud or whatever the right fraud is, rather than what you did charge? We could have charged wire fraud. We could have charged mail fraud. We could have added probably about 20 other counts of aggravated identity theft. Most of the charging decisions were a tactical decision, and as we assessed the case, because this specifically affected disabled veterans, we thought that theft of government property was the most appropriate charge to file. But the court is correct. There could have been other charges, numerous other charges, that we could have filed also on this. So that was the evidence. But having charged the theft, I mean the argument is that really the government needed this work to be done, and it was done, so that's the argument that Mr. Page is making. Correct, Your Honor, and this court in the Barnes decision has expressly rejected that argument. The purpose of the funds was not to have custodial work done at a government facility. The purpose of the funds was not to have landscaping. That was an aside. The purpose of the funds, the intended purpose of the funds, was to allow disabled veterans to have an advantage in getting government contracts to perform that. So the intended purpose of the funds was not the work that was done. The intended purpose of the funds was to give disabled veterans an opportunity to do business with the federal government, and that was expressly precluded by the Defendant's Act. Because it's hard for disabled veterans to get jobs. It is hard for them to get jobs. They have also made a sacrifice that we respect and admire and should honor. So in a lot of ways they have earned this special treatment, but precisely. Well, and the government is on the hook for VA-type benefits, treating things like post-traumatic stress syndrome, and people who have no employment often, not always, suffer more frequently from those kinds of effects than those who do have employment. Is that a fair conceptualization of a program like this? Yes, and unfortunately veterans in general, and disabled veterans specifically, are more likely to have those sorts of negative consequences going on in their lives. So that was the evidence. Very clearly supported the theft convictions and very clearly supported the aggravated identity theft convictions. As to the sentence, the district court explicitly stated in the record there were ten factors supporting the upward departure in this case. I'd first point out the upward departure was only for the theft conviction. It was for the 641 count 1 theft conviction. Originally, based on the guidelines, the range was 6 to 12 months. The district judge, after laying out all of these ten factors, departed only four levels and stayed within a new range of 15 to 21 months, sentenced the defendant for 21 months. Some of the factors that the district court noted clearly are contemplated by the 3553E factors and clearly support the upward variance that was given and, in our opinion, even a larger upward variance if the court had chosen to do so. Very significantly were the defendant's actions while he was on bond. He had been told specifically by the magistrate judge when he was arrested and had his initial appearance and released on this case, no more business, do not seek any more business from the government because it is alleged you're doing this fraudulently. He ignored that order. His bond was revoked because of that. That alone is grounds for an upward departure. Other factors that the district court specifically articulated to support this upward variance. The harm, this is a general, the charge was just a general 641 charge. Harm that the defendant caused true disabled veterans. In the trial, we were allowed to bring in, I believe it was two actual disabled veterans who had businesses, who had bid on the same contracts that the defendant had bid on and they had lost out. So the district court also noted these true disabled veterans were harmed. There were two allowed at trial and the evidence in the pre-sentence report showed that there were many more. Was there evidence at trial not as to Pace but sort of more so the jury could understand how the program worked? Not only to show how the program worked, but to basically humanize it, Your Honor. It didn't want it to be something that, well, the only people who care about this are government bureaucrats, but wanted to show, no, there are real people who are harmed. But they didn't have evidence about Mr. Pace, right? They did not know Mr. Pace at all. They just said, I am Glenn Jackson and I'm a veteran and I applied for this contract and it was denied. And it happened to be each time a contract that defendant Pace and his companies were awarded to because of his false representations. Other reasons for the upward departure. The defendant falsified his corporate papers that he filed with the Texas Secretary of State and other places. They were complete lies in those documents. That is a separate crime in and of itself. Again, another charge that could have been filed but was not. But the district court properly took that into account as she decided what would be an appropriate sentence in this case. Another thing the defendant did. Came out during the trial. He filed a false police report. The way this scheme basically unfolded, the defendant's girlfriend, they had a falling out. And she told the defendant's father what the defendant had been doing. In retaliation for that, the defendant filed a police report with the McKinney Police Department alleging, ironically, that his girlfriend had committed identity theft on him. That was offensive to the district court. Understandably so. And filing a false report is something that can be considered when you're sentencing a defendant. So he had the girlfriend and his daddy. Yes, sir. We don't know why he went to trial. That was his choice. You all didn't want this guy to plead just so you could. Never mind. It's not a question. Go ahead. It's not a question. It's an observation. Other factors. The defendant's failure to pay taxes on the money he stole. That is also a separate crime. Kind of a double dip. So the defendant's not only is he receiving this money, now he's not paying taxes on it. Well, what didn't the government put in his case? They put a whole ton of bricks. His tax consequences. I mean, the restitution. You brought the veterans in. Yes, sir. And it only took four days? I mean, I can think of some other categories of cases I shouldn't hope the government is putting the weight of its authority on, where you have sort of not as much visceral evidence, I'll just say, to put on. I'm not being facetious, but it looks like you all had the guy dead to rights and then some. Okay. Go ahead. Other factors that supported the upwards departure, Your Honor. Okay. You all keep saying departure, and then you say variance, and then you say departure. Which one are you contending it is? A departure or a variance? Because they're different. I know we say, well, but then it could be supported as a variance if it's not really a departure. But which one are you contending it is? We're contendering, Your Honor, how about this for a lawyer answer? It applies to both. And I understand the terms are different and they mean different things. Unfortunately, they are frequently used interchangeably. Yes, but we try to get it right. Yes, Your Honor. And a departure is where you actually said they went up four levels, where you actually go through the guidelines and you do that. And that's actually, if you use a reason for departure within the guidelines, that's a guidelines sentence, although a departure, versus a variance where you say, well, I know what this says, but I have these concerns, and you don't march up the steps. So which one are you contending the judge did here, or are you saying the judge mixed the two? We're saying it was made. You're saying it went either way. I get that. But which one is it? Yes, Your Honor. Yes, Your Honor. We're saying either way. I think as it was structured with the use of the guidelines, it was a departure, Your Honor. Sounds like one to me, but you all keep saying variance. So, okay. Fair enough. We do understand the argument from the defense, and sometimes we have to be prepared to address both. But to support the departure, as we'll agree to call it, one of the other factors that the court cited specifically in its statement of reasons and during the sentencing hearings was the defendant then attempted to transfer a lot of the money he had stolen to his mother and to his brother to try to hide it from authorities. There were other factors the court cited, which essentially can, in my view at least, be boiled down to the defendant. When he took the stand repeatedly, just the stories, the misrepresentations he made during his testimony were out there. Like the story that his dad approved of his use of the Social Security number? That was one of the more mild ones, Your Honor. There's nothing in the record about this. Mr. Stover and I have tried cases for about 20 years. This defendant's testimony on the stand, he didn't do himself any favors. I think he really hurt himself there. The district judge, of course, took notes, watched the defendant closely, and remembered when he was sentenced. So all of these factors that the district court cited to support the sentence are legitimate under 3553A, Your Honor. Was there any evidence put in in the pre-sentence or whatever? Did he have any type of mental health issues or concerns that were in the PSR? I'm not suggesting they would have mitigated this. I'm just curious. Not that I recall, Your Honor. Okay, that's fine. For those reasons, we ask you to affirm the conviction in the sentence. If the court has no remaining questions, I cede my remaining time. All right, thank you, sir. We have a governance. I appreciate it. Back to you, Ms. Benson. Do you have a rebuttal? Very briefly, Your Honors. Ms. Benson, were you the trial counsel in this case? No, Your Honor. Mr. Page had retained counsel for the trial. I believe he had two counsel. And that does make it a little difficult since I wasn't there in the trenches trying this case. But I do believe, Your Honor, and I don't want to beat a dead horse, but one of the things that the government had mentioned was about the victim and how they brought the victims into court. The defense counsels didn't object to that, so I didn't bring that as an issue, is that in these procurement cases, the service-disabled veterans, though I know it's a set-aside, in Harris, the Fifth Circuit ruled that the primary benefit of these contracts exists first and foremost to serve the government's procurement needs. And, yes, these are set-aside contracts and they are to help service-disabled veterans, but as far as sentencing and what the court should be looking for. So you're saying they're not victims, the folks that could have gotten the contract because they really were disabled vets but did not get it because Mr. Page took it, you're saying they're not victims? Yes, Your Honor. Under Harris, that's your argument? Right, under Harris. So you're saying it's improper but because it wasn't objected to you didn't raise it? Yes, Your Honor. They did not object to it, but I think it was just to get sympathy from the jury to say, you know, these are the people that they were set-aside for. But, again, the courts have stated that that's not who on this type of procurement case is who benefits. It's not a government benefits case. And so I think that the court should not have looked to the service-disabled veterans, that they should have just looked at this as a government procurement case and that's how they should have looked at it in sentencing. Mr. Page did not receive a three-level reduction or a two-level reduction for acceptance of responsibility. Number one, because he proceeded to trial, but also he would not have received that even if he had pled guilty because he violated his conditions of pretrial release. So we're looking at the guidelines. He kept not helping himself. Once he decided to pass the traffic ticket and commit a federal crime, he just went for it. Yes, but the guidelines did take that into consideration, that he received no downward departure or the two-level reduction for acceptance of responsibility. So you're saying he got the full bore already and didn't need the departure or variance, and you can tell us which one you think it is. Your Honor, I believe it was a variance. The judge didn't call a departure. I think she just said that it was going to be a variance from the guideline range. I think in a departure, yes, she would have had to probably go through more procedurally, but as the government has stated, I think sometimes the court looks at them the same, but I do believe this was a variance. And so I just believe that the guidelines had taken into account a lot of the upward departure. He accepted his responsibility and he got some add-ons. You're saying he kind of already, the guidelines was already a rather fulsome number and they didn't need to go beyond that. Yes, Your Honor. Okay. And that will be all, Your Honor. All right. There's no further questions. Thank you, Ms. Page. Thank you, counsel of the government. I appreciate the briefing and argument in the case. It was submitted and we will decide it. Thank you.